Sayre W. KLEBANOFF, Plaintiff,
United States of America, Intervening
Plaintiff,

v.

The MUTUAL LIFE INSURANCE COM-
PANY OF NEW YORK, Defendant and
Plaintiff on Interpleader Counterclaim,

v.

Sayre W. KLEBANOFF, the Tradesmens
National Bank of New Haven, and W.
Paul Flynn, Trustee in Bankruptcy of
the Bankrupt Estates of Sayre W. Kle-
banoff and M. Edward Klebanoff, De-
fendants on Interpleader Counterclaim.

Civ. No. 9893.

United States District Court
D. Connecticut.

July 15, 1965.

Ira B. Grudberg, of Jacobs, Jacobs, Jacobs & Jacobs, New Haven, Conn., for Sayre W. Klebanoff, plaintiff in main action and a defendant on counterclaim.

Philip S. Walker and Bradley B. Bates, of Day, Berry & Howard, Hartford, Conn., for The Mutual Life Ins. Co. of New York, defendant in main action and plaintiff on counterclaim.

Lawrence W. Iannotti (Richard H. Bowerman, on the brief), of Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., for The Tradesmens Nat. Bank

938

of New Haven, a defendant on counter-claim.

Charles H. Fischer, Jr., and James T. Brennan, of Fischer & Fischer, West Haven, Conn., for W. Paul Flynn, a defendant on counterclaim as trustee in bankruptcy of bankrupt estates of Sayre W. Klebanoff and M. Edward Klebanoff.

Sherin Reynolds, Dept. of Justice, Washington, D. C. (Fred B. Ugast and Charles A. Simmons, Dept. of Justice, Washington, D. C., Robert C. Zampano, U. S. Atty., and Howard T. Owens, Jr., Asst. U. S. Atty., New Haven, Conn., on the brief), for the United States, intervening plaintiff.

TIMBERS, Chief Judge.

In this action by the named beneficiary of ten life insurance policies to recover their face value of $100,000 following the death of her insured husband, the insurer, alleging that it is holding as stakeholder the sum of $58,895.99 due upon the policies, interpleaded by counterclaim, pursuant to Rule 22(1), Fed.R. Civ.P., three claimants of the insurance proceeds held by the insurer: plaintiff as named beneficiary; a bank as judicial lien creditor of plaintiff and the insured; and the trustee in bankruptcy of plaintiff and the insured.

JURISDICTION

Sayre W. Klebanoff (Mrs. Klebanoff), plaintiff in the main action and an interpleaded defendant on the counterclaim, is a Connecticut citizen.

The Mutual Life Insurance Company of New York (Mutual), defendant in the main action and plaintiff on the interpleader counterclaim, being a New York corporation and having its principal place of business in New York, is a New York citizen.

The Tradesmens National Bank of New Haven (Tradesmens), an interpleaded defendant on the counterclaim, being a national banking association organized under the laws of the United States and having its principal place of business in Connecticut, is a Connecticut citizen.

W. Paul Flynn (Flynn), an interpleaded defendant on the counterclaim as trustee in bankruptcy of the bankrupt estates of Mrs. Klebanoff and her deceased husband, M. Edward Klebanoff (Mr. Klebanoff), is a Connecticut citizen.

■ Diversity jurisdiction is well founded, there being diversity between plaintiff and defendant in the main action and between plaintiff and defendants on the interpleader counterclaim (although there is no diversity between defendants on the interpleader counterclaim); and the amount in controversy exceeding $10,000, exclusive of interest and costs.[1]

FACTS

There is no dispute with respect to the material facts necessary to a determination of this motion for partial summary judgment. The facts are established by admissions in the pleadings, answers to interrogatories, a stipulation between the parties, documents agreed to by the parties as exhibits and records of judicial proceedings in the Bankruptcy Court and the Superior Court for New Haven County.

*Death Of Mr. Klebanoff*

The death of Mr. Klebanoff on November 9, 1962 signalled the obligation of Mutual to pay death benefits under insurance policies on his life and at the same time galvanized creditors of both Klebanoffs into action in reasserting with renewed vigor their claims upon the proceeds of the insurance while still in the hands of the insurer. Death brought into new focus the serious financial difficulties of both Klebanoffs over a period of many years—difficulties which had been the subject of extensive but inconclusive litigation in the Superior Court and the Bankruptcy Court. All hands have now settled upon this Court as the forum of final adjudication, at least

1. 28 U.S.C. § 1332(a) and (c); Rule 22 (1), Fed.R.Civ.P.; 3 Moore's Federal Practice ¶22.04[2], at 3012-3013 (2d ed. 1964).

as to the disposition of the proceeds of the life insurance. It is necessary to go back several months before Mr. Klebanoff's death to get our bearings.

## Mr. Klebanoff's Life Insurance Policies

In June 1962, Mr. Klebanoff was the owner of ten policies of insurance issued on his life by Mutual. The named beneficiary of each policy at all times has been his wife, Mrs. Klebanoff. Each policy reserved to the insured all significant powers under the policy, including the right to change the designation of beneficiary, the right to borrow against it, the right to cash it and other customary rights of policy ownership.

## Superior Court Proceedings

For some time prior to July 6, 1962, both Klebanoffs had borrowed sums of money from Tradesmens evidenced by promissory notes, signed either as maker, co-maker or endorser. Beginning on July 6, 1962, they defaulted in payments of principal and interest aggregating some $75,397.36, according to Tradesmens. By writs, summonses and complaints dated July 6, 1962, August 9, 1962 and September 7, 1962, Tradesmens commenced three actions in the Superior Court for New Haven County against both Klebanoffs and Mutual seeking to recover from both Klebanoffs on notes alleged to have been signed, in part, by Mr. Klebanoff and, in part, by Mrs. Klebanoff; the notes, as of the respective dates of the writs, were alleged to be due and payable to Tradesmens.

In connection with the commencement of each of these actions, certain attachments and garnishments were effected. On November 9, 1962 and November 21, 1962, Tradesmens obtained orders for further attachments in each of the three actions.

In connection with the actions instituted by Tradesmens on July 6, 1962 and August 9, 1962, injunctions were issued by the Superior Court against both Klebanoffs and Mutual temporarily enjoining them from "paying or permitting or causing to be paid the cash surrender value of any policy of insurance issued by [Mutual] on the life of M. Edward Klebanoff and against changing or causing or permitting to be changed the beneficiary of any said policy of insurance or loaning money or causing money to be loaned against the security of any such policy or its cash surrender value and against pledging, assigning, transferring or in any other manner disposing of any of said policies or causing or permitting the same to be pledged, assigned, transferred or in any other manner disposed of."

The three actions remain pending in the Superior Court. The attachments and garnishments have not been released or discharged. The injunctions set forth above remain in effect. Final adjudication of the instant action in this Court will be determinative of the rights of the parties in the three pending Superior Court actions, to the extent of the insurance proceeds here involved.

## Bankruptcy Court Proceedings

Both Klebanoffs were adjudicated bankrupt as of August 22, 1962, pursuant to an involuntary petition filed that date by three creditors of the Klebanoffs. Mrs. Klebanoff filed in the Bankruptcy Court a schedule of debts in which she included each of the notes which she is alleged to have signed and for which judgment against her is sought in the three actions brought by Tradesmens in the Superior Court. The Referee in Bankruptcy found that both Klebanoffs were insolvent, within the meaning of the Bankruptcy Act, on July 6, 1962. The judicial encumbrances obtained against both Klebanoffs at the time of commencement of the original Superior Court action constituted the acts of bankruptcy relied on by the petitioning creditors.

On February 26, 1963, the Referee fixed April 15, 1963 as the last day for filing objections to the discharge of Mrs. Klebanoff, bankrupt. On June 13, 1963, the Referee denied Tradesmens' petition for an extension of time to file objections to her discharge and granted Tradesmens' petition to stay the issuance of a

discharge to her until ten days after final determination of whether any of the proceeds of the insurance on the life of Mr. Klebanoff constitute assets of Mrs. Klebanoff's bankrupt estate. On July 31, 1963, the Referee denied Mrs. Klebanoff's petition to declare null and void liens obtained by Tradesmens against the life insurance policies here in issue.

### District Court Proceedings

On July 9, 1963, Mrs. Klebanoff instituted the instant action against Mutual, alleging, so far as is here relevant, that as the named beneficiary she is entitled to the proceeds of the ten insurance policies issued by Mutual on the life of Mr. Klebanoff. By way of counterclaim, and as part of its answer, Mutual interpleaded the adverse claimants to the life insurance proceeds: Mrs. Klebanoff, Tradesmens and Flynn as trustee in bankruptcy of the bankrupt estates of both Klebanoffs. Pleadings have been filed by each of the defendants interpleaded on the counterclaim; each claims to be entitled to the life insurance proceeds admitted to be due from Mutual. As stakeholder of the interpleaded sum, Mutual claims no beneficial interest therein; it does seek to recover out of the interpleaded sum its costs and counsel fees on the interpleader counterclaim.[2]

Mrs. Klebanoff—as plaintiff in the main action and one of the defendants on the interpleader counterclaim—has moved for partial summary judgment, declaring that she as the named beneficiary of the ten life insurance policies is entitled to the interpleaded insurance proceeds. The motion is for *partial* summary judgment because the parties have reserved for later determination the issues with respect to an accident and sickness insurance policy (also issued by Mutual to Mr. Klebanoff) and a double indemnity claim with respect to the life insurance policies; such issues depend upon the determination whether Mr. Klebanoff's death was caused by accident.[3]

The parties have agreed to certain steps to narrow the issues and to facilitate the Court's determination of the instant motion. They have stipulated that the net proceeds due and payable upon the death of Mr. Klebanoff from the ten life insurance policies issued by Mutual amounted to $58,896.09, exclusive of any claim for double indemnity benefits. By further agreement the sum of $58,896.-09, plus a stipulated sum of $1,666.70 resolving all claims for interest on the principal sum of $58,896.09 made prior to the agreement, has been deposited in several savings banks in the State of Connecticut to draw interest at 4% while awaiting the judgment of this Court.

### QUESTIONS PRESENTED

The instant motion for partial summary judgment, pursuant to Rule 56, Fed.R.Civ.P., presents the following questions for determination:

I. Which of the adverse claimants is entitled to the insurance proceeds admitted to be owing by Mutual?

2. Mutual, as part of its answer, also pleaded a set-off counterclaim, alleging indebtedness by the insured to Mutual arising from unpaid premiums and from loans on certain of the policies resulting from their lapse for non-payment of premiums. This set-off counterclaim has been withdrawn by Mutual in view of the stipulation entered into by all parties in connection with the instant proceeding.

3. Also reserved for later determination, by agreement of all parties, is the claim of the United States based on federal tax liens against Mrs. Klebanoff for alleged unpaid income taxes, interest and penalties totalling $66,617.32 for the taxable years 1960 and 1961 of both Klebanoffs. The Court allowed the United States to intervene as a plaintiff, pursuant to Rule 24(a), Fed.R.Civ.P., and to file its complaint in intervention, subject to a stipulation entered into by counsel for all parties, including the United States, that all proceedings on the complaint in intervention be held in abeyance until 20 days after the Court's determination of the pending motion for partial summary judgment which was filed prior to the motion of the United States for leave to intervene. See infra pp. 950–952.

II. Is Mutual entitled to recover its costs and counsel fees on its interpleader counterclaim?

III. Should adjudication of the federal tax claims against the bankrupt estate of Mrs. Klebanoff proceed in the Bankruptcy Court?

IV. Should entry of final judgment be directed pursuant to Rule 54(b) on the interpleader counterclaim?

The Court holds that the trustee in bankruptcy of the bankrupt estate of Mrs. Klebanoff is entitled to the insurance proceeds held by Mutual as stakeholder; that Mutual is entitled to recover out of the interpleaded sum its costs and counsel fees limited strictly to the interpleader counterclaim proceedings; that adjudication of the federal tax claims against the bankrupt estate of Mrs. Klebanoff should proceed in the Bankruptcy Court; and that entry of final judgment should be directed pursuant to Rule 54(b) on the interpleader counterclaim.

I

RIGHTS OF ADVERSE CLAIMANTS TO INSURANCE PROCEEDS

Although there are three adverse claimants, four adverse claims are asserted because of the dual status of Flynn as trustee in bankruptcy of the bankrupt estates of Mrs. Klebanoff and Mr. Klebanoff, respectively. In order to determine the first question raised by the motion for partial summary judgment, the Court will consider the following claims to the interpleaded sum and in this order:

(A) Flynn's claim as trustee in bankruptcy of Mr. Klebanoff.

(B) Flynn's claim as trustee in bankruptcy of Mrs. Klebanoff.

(C) Tradesmens' claim as a judicial lien creditor of Mrs. Klebanoff.

(D) Mrs. Klebanoff's claim as named beneficiary under the ten life policies.

## (A) Flynn, as trustee in bankruptcy of Mr. Klebanoff, is not entitled to the insurance proceeds.

The second proviso of Section 70(a)(5) of the Bankruptcy Act[4] governs the rights of a trustee in bankruptcy to insurance policies issued on the life of a bankrupt.[5] The proviso applies only to non-exempt life insurance policies having a cash surrender value on the date of the filing of the bankruptcy petition and only to the extent of the cash surrender value.[6] The ten life insurance policies here in question all appear to have had cash surrender value on August 22, 1962, the date the involuntary petition was filed by creditors of Mr. Klebanoff.[7] The second proviso of Section 70(a)(5) is applicable, therefore, if the policies are non-exempt.

Connecticut law determines whether the insurance policies are exempt property under Section 70(a) of the Bankruptcy Act.[8] Section 38–161 of the Connecticut General Statutes provides in pertinent part:

"The beneficiary of any life insurance policy, being a person other than the insured, whether named as beneficiary in the original policy or subsequently named as beneficiary in accordance with the terms of such policy, shall be entitled to the proceeds of such policy as against the

4. 11 U.S.C. § 110(a)(5)(1952). The United States Code will not be cited hereafter when referring to the Bankruptcy Act.

5. Burlingham v. Crouse, 228 U.S. 459, 471–473, 33 S.Ct. 564, 57 L.Ed. 920 (1912); 4 Collier on Bankruptcy § 70.23(3) (14th ed. 1961).

6. Burlingham v. Crouse, supra note 5; Everett v. Judson, 228 U.S. 474, 33 S.Ct.

568, 57 L.Ed. 927 (1912); 4 Collier on Bankruptcy § 70.23, at 1183–1184 (14th ed. 1961).

7. Mutual's Answers to Interrogatories, par. 17, filed September 19, 1963 in response to Plaintiff's Interrogatories, par. 17, filed August 17, 1963.

8. Holden v. Stratton, 198 U.S. 202, 25 S. Ct. 656, 49 L.Ed. 1018 (1904); 1 Collier on Bankruptcy § 6.03 (14th ed. 1961).

representatives or creditors of the insured, unless such policy was procured or such designation of a beneficiary was made with intent, express or implied, to defraud creditors."

Although this statute on its face appears to exempt only matured death benefits of a life policy, the Court of Appeals for this Circuit, after a thorough examination of the legislative history of the statute, has held that it also exempts the cash surrender value of a policy, when the insured is still living, from the claims of the insured's trustee in bankruptcy.[9] This decision is conclusive on the exempt character of the policies here involved.

■■ The trustee concedes that the exemption statute protects *beneficiaries* from the claims of the insured's creditors, but contends that the statute affords no protection to the *insured debtor* from the claims of his own creditors directly against the interest which the insured has in his policies. On this ground, the trustee urges that Section 38–161 is not here applicable. The Court rejects this contention. To give the exemption the narrow construction urged by the trustee is to give beneficiaries of insured debtors no protection at all. The Court does not believe that the Connecticut legislature intended such a result. Nor would such a construction be in keeping with the views of the Court of Appeals in the *Pearl* case.

■ The trustee argues, in the alternative, that subsections (3) and (6) of Section 70(a) of the Bankruptcy Act establish his rights to the interpleaded sum. Neither subsection applies to exempt property. In view of the Court's holding above, neither subsection gives the trustee any rights in Mr. Klebanoff's insurance policies.[10]

■ Finally, the trustee contends that because the insurance premiums were paid pursuant to an automatic premium payment plan by a single check drawn on the bankrupt's account "in which the insured M. Edward Klebanoff had mingled his own funds with funds obtained fraudulently from others", the trustee is entitled to the policy proceeds on a constructive trust or equitable lien theory and Section 38–161 does not apply. The Court rejects this contention. The trustee has produced no proof that any such tainted monies were ever deposited in the account on which the premium payment checks were drawn. Indeed, the trustee recognizes in his brief that "It would seem difficult if not impossible for any of the defrauded parties to trace adequately the money paid in as premiums as being a result of the fraud perpetrated on him."

The Court holds that the trustee of the bankrupt estate of Mr. Klebanoff is not entitled to the insurance proceeds.

### (B) Flynn, as trustee in bankruptcy of Mrs. Klebanoff, is entitled to the insurance proceeeds.

Section 70(a)(5) of the Bankruptcy Act, which establishes the right of the trustee for the bankrupt beneficiary, Mrs. Klebanoff, to reach her interest in the ten insurance policies, provides in pertinent part:

"(a) The trustee of the estate of a bankrupt * * * upon his * * * appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property

---

9. Pearl v. Goldberg, 300 F.2d 610 (2 Cir. 1962). The policy in the *Pearl* case had a limited endowment feature (although otherwise a life insurance policy). The Court of Appeals rejected the argument of the trustee in bankruptcy that this feature took the policy outside the protection of Section 38–161.

10. Even if the insurance policies were not exempt under Connecticut law, the trustee's rights to the policies would be governed exclusively by the insurance proviso of Section 70(a)(5) since the policies had cash surrender value at the time the bankruptcy petition was filed. Burlingham v. Crouse, supra note 5.

wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *."

The foregoing provision has been construed as permitting the trustee in bankruptcy of a beneficiary to reach the beneficiary's interest in insurance under the following conditions: [11]

"If a policy in existence at the time of bankruptcy names the bankrupt as beneficiary without any reservation by the insured of the power to change such a designation, the bankrupt has a vested though potential interest that vests in the trustee as an asset of the estate, subject, of course, to the conditions that the property is transferable or leviable and not exempt."

Accepting this as a correct enumeration of the requirements of Section 70(a) (5), each of the following three conditions must be satisfied before the trustee's right to Mrs. Klebanoff's interest in the insurance can be established:

(1) That Mr. Klebanoff retained no right in the policies which would deprive Mrs. Klebanoff as beneficiary of a vested interest in the insurance;

(2) that Mrs. Klebanoff's interest in the insurance was either transferable or leviable; and

(3) that Mrs. Klebanoff's interest in the insurance was non-exempt.

(1) *Mrs. Klebanoff had a vested interest in the insurance.*

Connecticut law determines the nature of Mrs. Klebanoff's interest in the insurance.[12] The trustee and Tradesmens argue that the Superior Court injunction of July 6, 1962, enjoining Mr. Klebanoff from changing the beneficiary of his ten life insurance policies, effectively deprived him of any right to change the beneficiary designation that he had reserved in his insurance contracts with Mutual. Consequently, they contend, this Court should view the case as one where the insured retained no right to change the beneficiary at the time the bankruptcy petition was filed, thereby at that time giving the beneficiary a vested interest in the insurance to which her trustee succeeds. Anticipating this line of argument, plaintiff claims that the Superior Court injunction worked, at best, a "temporary, perhaps fleeting" restriction on Mr. Klebanoff's right to change the beneficiary designation. As support for this claim plaintiff asserts that, at any time prior to the date the bankruptcy petition was filed, Mr. Klebanoff was entitled under Connecticut law to nullify both the attachment and the injunction by substituting a bond with surety or attacking the attachment and injunction as void on the ground the debtor's property was exempt.

Connecticut law does not support plaintiff's theory that her interest in the insurance policies was exempt from the claims of her creditors. Tradesmens, the attaching creditor, was a creditor of both Mrs. Klebanoff and her husband. Section 38–161 of the Connecticut General Statutes, cited by plaintiff as the basis for her exemption claim, protects the beneficiary from the claims of the insured's creditors only; it does not exempt the insurance from the claims of the beneficiary's creditors.

Furthermore, the effect of the injunction, not the attachment, is critical to the validity of the trustee's claim to the beneficiary's interest in the insurance. Plaintiff has not demonstrated how the injunction conflicted with the limitations of Section 38–161. No interest of the beneficiary in the insurance policies, as protected by Section 38–161, was pre-

11. 4 Collier on Bankruptcy § 70.23, at 1198 (14th ed. 1961) and cases there cited.

12. 4 Collier on Bankruptcy § 70.15, at 1034 (14th ed. 1961).

judiced by the issuance of the injunction alone; the injunction merely froze Mrs. Klebanoff in her status as beneficiary until further order of the court.

The Court also finds unpersuasive plaintiff's contention that Mr. Klebanoff might have applied to the Superior Court to dissolve the injunction by offering to substitute a surety bond for his insurance policies. Again, the Court is primarily concerned with the injunction, not the attachment. Section 52–304 of the Connecticut General Statutes, cited by plaintiff as the basis for Mr. Klebanoff's putative right to dissolution, authorizes dissolution of attachments, not injunctions.

Furthermore, even if there were statutory or other basis for a Connecticut court to dissolve an injunction—here, an injunction against exercise of numerous rights incident to insurance policy ownership, including pledging, assigning or transferring the policies; borrowing money against them; cashing them; or changing the beneficiaries—Mr. Klebanoff at no time made any attempt to exercise such right by any of the means suggested by plaintiff. Upon the date the bankruptcy petition was filed against both Klebanoffs, the time specified by Section 70(a) as critical in determining the nature of bankrupt's property interests, the injunction was still in effect. Under the driest of abstract theory only could Mr. Klebanoff be said to have retained the right to change the beneficiary designation at that critical date. The legal effect of the injunction was to deprive him of his contractual right.

 The Superior Court injunction alone may well be sufficient basis for the trustee's claim that Mrs. Klebanoff had a vested interest in the insurance on August 22, 1962. But it is not necessary to ground the trustee's claim on the injunction alone; for the Connecticut Supreme Court of Errors has held in at least three cases that, regardless of whether the insured reserved the right to change the beneficiary, the named beneficiary under a life insurance policy has a vested interest in the insurance.[13]

In the *Allen* case, where the nature of a wife's interest as beneficiary under her husband's life insurance prior to his death was in issue, the court stated:[14]

"The beneficiary's interest is regarded, in this state and quite generally as more than a mere expectancy. Where no right to change is reserved in the policy, the rights of the named beneficiary cannot be impaired by the assured and the company without his assent; Shepard & Co. v. New York Life Ins. Co., 87 Conn. 500, 504, 89 A. 186; where, as here, the right to change is reserved to the assured, the interest of the beneficiary is yet deemed to be vested, although qualified in that it is subject to be defeated by an exercise of the right reserved. Neary v. Metropolitan Life Ins. Co., 92 Conn. 488, 492, 103 A. 661, and note, L.R.A. 1918F, 311; Farmers' Loan & Trust Co. v. McCarty, 100 Conn. 367, 373, 124 A. 40; 37 C.J. 580. 'So long as the power of defeasance is not exercised, [beneficiaries] stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies.' Barbin v. Moore, 85 N.H. 362, 368, 159 A. 409, 413, 83 A.L.R. 69. * *"

In a number of other states, a beneficiary has a vested interest only if the insured has no right to change the beneficiary. Consequently, the general construction of Section 70(a) (5), referred to above at page 941 (quoting from 4 Collier on Bankruptcy § 70.23, at 1198 (14th ed. 1961)), seems to require that no right to change the beneficiary be

---

13. Allen v. Home National Bank, 120 Conn. 306, 180 A. 498 (1935); O'Connell v. Brady, 136 Conn. 475, 72 A.2d 493 (1950) ; Connelly v. Wells, 142 Conn. 529, 115 A.2d 444 (1955) ; cf. United States

v. McWilliams, 234 F.Supp. 117 (D.Conn. 1964).

14. Allen v. Home National Bank, supra note 13, at 310–311.

retained as a condition to the trustee's reaching the beneficiary's interest. A closer reading of the quoted portion from Collier (supra note 11), however, in the light of Section 70(a), indicates that the primary condition is that the beneficiary have a vested interest on the date the bankruptcy petition is filed. The reference to the absence of a right to change the beneficiary merely states the majority view as to when a beneficiary is deemed to have a vested interest.

Plaintiff's reliance upon In Re Hogan, 194 F. 846 (7 Cir. 1912), therefore, as supporting her claim that she had no interest in the insurance which her trustee could reach, is inapplicable because the court in that case was construing Wisconsin law, which is in accord with the majority rule, but not with the Connecticut rule.

Likewise inapplicable is plaintiff's citation of Curtis v. Humphrey, 78 F.2d 73 (5 Cir. 1935), cert. denied, 296 U.S. 605, 56 S.Ct. 121, 80 L.Ed. 429 (1935), In Re Clark, 169 F.Supp. 391 (W.D.Mich. 1959), and In Re Jacobson, 24 F.Supp. 749 (D.N.J. 1938), in support of her claim that the trustee cannot reach her interest in the insurance. In each of those cases the bankrupt beneficiary was, additionally, either the owner or the absolute assignee of the policy. Such additional rights entitled the bankrupt beneficiary to claim the protection of the insurance proviso of Section 70(a) (5) of the Bankruptcy Act.

In United States v. McWilliams, supra note 13, Judge Blumenfeld determined that under Connecticut law, as between the owner-insured and the beneficiary of a life insurance policy, the property interest in the policy, within the meaning of 26 U.S.C. § 6321 and for purposes of determining the validity of a tax lien, belonged to the insured in the absence of a contractual agreement on the part of the insured not to change the beneficiary designation in consideration of the beneficiary's promise to pay the premiums. Accordingly, Judge Blumenfeld held that the beneficiary's interest in the policy, although recognized under Connecticut law as being vested subject to defeasance, was defeated by a government tax lien arising from an assessment of the insured's tax liability. The *McWilliams* decision is inapplicable to the instant case for the reasons that (i) no creditor of Mr. Klebanoff, as contrasted with the insured in *McWilliams*, was permitted to obtain an interest in the insurance so as to divest the beneficiary's interest; (ii) the divesting claim in *McWilliams* was asserted by a creditor of the insured only, as contrasted with the trustee's claim here as creditor of both insured and beneficiary; and (iii) *McWilliams* dealt with the narrow question of the nature of the insured's property interest within the meaning of a provision of the internal revenue code. The *McWilliams* decision, eminently sound in the view of this Court, can hardly be said, as plaintiff claims, to "very strongly support * * * the position espoused by Mrs. Klebanoff." It does confirm, in Judge Blumenfeld's words, that "Connecticut recognizes the interest of a beneficiary of a life insurance policy as being vested though subject to defeasance by the owner where the latter retains his right to change the named beneficiary * * *." Supra note 13, at 120.

*(2a) Mrs. Klebanoff's interest in the insurance was not leviable.*

That Mrs. Klebanoff's interest in the insurance on the date of filing the bankruptcy petition was vested, does not necessarily mean that it was transferable or leviable. In order to satisfy the second condition for the application of Section 70(a) (5), her vested interest must be shown, as of August 22, 1962, to have been subject *either* to levy by her creditors *or* to transfer by her.

As for the leviability of Mrs. Klebanoff's interest in the insurance, the Court has been unable to find any Connecticut law, statutory or decisional, authorizing creditors of a beneficiary under a life insurance policy to reach the interest of the beneficiary prior to death of the insured. The Connecticut Supreme Court of Er-

rors, however, has held [15] that public policy forbids that an interest in property, real or personal, which is so remote, contingent and of uncertain value that it cannot be fairly appraised or sold on execution, should be open to attachment, pointing out that the statutes of the State do not authorize attachment of such an interest. In view of these decisions holding analogous property interests, which are not "capable of ascertainment, definition and valuation,"[16] to be not open to levy, the Court concludes that Mrs. Klebanoff's interest in the insurance, although vested, was not leviable on August 22, 1962.

15. In Smith v. Gilbert, 71 Conn. 149, 41 A. 284 (1898), the court, in holding that a son's legacy or distributive share to become due from his father's estate after termination of the mother's life estate was a remainder interest so remote and uncertain that it was not open to attachment, stated (Id. at 154–155):

"In conformity with the settled policy of this state that all the property of a debtor should be holden for the payment of the debts of its owner, our courts have construed the language of these statutes as rendering liable to attachment certain legal and equitable interests in property, the absolute or legal title to which property is not in the debtor, but which interest is within his control, and can be fairly appraised or sold; as the interest of one partner in the co-partnership property, the interest of a *cestui que trust* in real estate, an equitable interest in shares of stock, a mortgagor's equity of redemption, and such other interests in goods or lands, whether legal or equitable, as, with justice to both debtor and creditor, may in the manner provided by statute, be appropriated to the payment of the former's debts. Punderson v. Brown, 1 Day, 93–96; Davenport v. Lacon, 17 Conn. 278; Johnson v. Conn. Bank, 21 id. 148, 156; Bunnell v. Read, 21 ibid. 586; Middletown Savings Bank v. Jarvis, 33 id. 372, 379.

"We have, however, never held that an uncertain interest, incapable of just appraisal, and possibly of no value, may be thus sequestered for the creditor's doubtful benefit, and we think we ought not to so hold. When an interest which may be strictly neither goods nor land is nevertheless clearly property capable of being fairly sold and appraised, which is subject to the debtor's control, and which ought to be responsible for his debts, we say that the policy of the state for 250 years clearly indicates that such interest is attachable property within the meaning of the statutes. But the same reasoning which has induced our courts to place such a construction upon the language of our statutes, leads us to the conclusion that the defendant's interest in his father's estate is not attachable within the meaning of the law. While it is unjust that one should keep from his creditors property which can be fairly sold or applied to the satisfaction of his debts, it is equally unjust that a creditor should seize and destroy an interest of his debtor which is so uncertain and contingent that it cannot be fairly sold or appraised. The policy of the law justifies the extension of the right of attachment to property which, though not strictly within the letter, is within the equity of the statute. It does not justify such an extension of that right as will be likely to result in the destruction of a paternal gift which can be of no present value to any one, and may never be of value to the debtor or his assignees."

In Humphrey v. Gerard, 83 Conn. 346, 77 A. 65 (1910), the right which one may have to recover for improvements made upon real estate under a mistaken belief as to the title, although "an equitable right * * * which charges the land with a lien which courts of equity will upon proper occasion recognize, and by appropriate process enforce," was held not open to a levy of execution upon the realty, or interest therein, to satisfy plaintiffs' judgment; nor could such right be reached by a judgment lien and its foreclosure, which is merely another mode of accomplishing the result formerly attained by levy of execution. The court said (Id. at 356):

"But not all interests in property can be appropriated by a levy of execution upon the property. That of a mortgagee cannot. Huntington v. Smith, 4 Conn. 235, 237; McKelvey v. Creevey, 72 id. 464, 467, 45 Atl. 4; Pettus v. Gault, 81 Conn. 415, 419, 71 Atl. 509. In like manner an interest which is so indeterminate, uncertain, or contingent that it is incapable of being appraised or sold with fairness to both the debtor and creditor, may not be thus levied upon."

16. Humphrey v. Gerard, supra note 15, at 356; Smith v. Gilbert, supra note 15, at 155.

**(2b)** *Mrs. Klebanoff's interest in the insurance was transferable.*

As for the transferability of Mrs. Klebanoff's interest in the insurance, Section 1(30) of the Bankruptcy Act broadly defines "transfer" as follows:

"'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor;"

If Connecticut law permits a beneficiary's interest in life insurance to be transferred prior to death of the insured in any of the ways enumerated in Section 1(30), such interest is transferable within the meaning of Section 70(a) (5).

While there appears to be no Connecticut law directly in point, decisions by the Connecticut Supreme Court of Errors dealing with the rights of beneficiaries to the proceeds of insurance policies which were assigned or pledged as collateral for loans with the consent of the beneficiary and the insured prior to death of the insured, impliedly recognize the transferability of the beneficiary's interest.[17] The common practice of lenders requiring the beneficiary to join with the insured in the pledge or assignment of insurance policies reflects the transferable nature of the beneficiary's interest. It is arguable that the requirement that the beneficiary join in the pledge or assignment is a mere formality and indicates no independent transferability of the beneficiary's interest. But the cited cases [18] strongly suggest otherwise; for in rejecting the claims of assignee-creditors to the entire policy proceeds upon subsequent default on the secured loan and death of the insured, the court held in each case that any death benefits in excess of the amount of the loans secured by the policies belong to the beneficiaries. Implicit in such holdings is the view that the beneficiary's interest in the policy is assignable to the extent of the loan.

The Court holds, absent persuasive showing to the contrary,[19] that Mrs. Klebanoff's interest in the insurance was

17. E.g., Allen v. Home National Bank, supra note 13, at 309–311; Connelly v. Wells, supra note 13, at 535.

18. Ibid.

19. Plaintiff argues with considerable force that prior to the death of the insured her interest in the ultimate proceeds of the policies was so uncertain as to be beyond the reach of the trustee in bankruptcy. The main thrust of this argument, however, goes to the marketability of her interest on August 22, 1962 and not to its transferability. In applying Section 70(a) (5) to similarly uncertain interests (interests of bankrupt managing agent of life insurance company in renewal commissions), the Court of Appeals for this Circuit some years ago, in In Re Wright, 157 F. 544, 545 (2 Cir. 1907), distinguished between marketability and transferability:

"Now, it is of little importance whether the bankrupt and the insurance company, jointly or separately, might interfere with the trustee in realizing upon these interests. If they are property which can by any means be transferred, the creditors of the bankrupt are entitled to the benefit of them, however little they may bring. Marketability and assignability are quite distinct."

The Court recognizes that the Referee in Bankruptcy, in denying plaintiff's petition to declare null and void liens obtained by Tradesmens against the policies (supra, p. 940) held, that prior to the death of the insured, plaintiff had no interest in the policies to which a lien could attach. The Referee's ruling, even if it were binding on this Court, determined, in the context in which it was made, only that plaintiff's interest was not then subject to *attachment*, not that it was not *transferable*. Supra, pp. 945, 946.

transferable within the meaning of Section 70(a) (5).[20]

(3) *Mrs. Klebanoff's interest in the insurance was non-exempt.*

The Court having held that Section 38–161 of the Connecticut General Statutes did not exempt Mrs. Klebanoff's interest in the insurance from the claims of her creditors (supra, p. 943), the third condition for the applicability of Section 70(a) (5)—non-exempt nature of her interest—has been satisfied.

To summarize with respect to the claim of the trustee of the bankrupt estate of Mrs. Klebanoff: the Court holds that as of August 22, 1962, Mr. Klebanoff retained no right in the policies which would deprive Mrs. Klebanoff as beneficiary of a vested interest in the insurance —he retained no right to change the beneficiary; her interest, although not leviable, was transferable; and her interest was not exempt from the claims of her creditors.

Accordingly, the Court holds that, Mrs. Klebanoff's interest in the insurance having vested by operation of law, pursuant to Section 70(a) (5) of the Bankruptcy Act, in the trustee of her bankrupt estate on August 22, 1962, the trustee is entitled to recover the insurance proceeds held by the insurer as stakeholder.

The valuation of Mrs. Klebanoff's interest which vested in the trustee on August 22, 1962 is not free of difficulty. The authorities are sparse and not enlightening. Plaintiff argues that the most that passed to the trustee was the cash surrender value of the policies. The trustee argues that he should be regarded as a purchaser for value of that interest to which his bankrupt ultimately became entitled. Tradesmens, on behalf of the trustee, argues that the subsequent death of the insured merely enhanced fortuitously, and placed a liquidated value on, the property interest which vested in the trustee at the time of bankruptcy. There is no support for the first two views and little for the third.

Such authorities as the Court has been able to find tend to support Tradesmans' view. One federal court, in analyzing the rights of a trustee in bankruptcy to his bankrupt's interest as beneficiary under an insurance policy, said: [21]

"Before reaching the query whether [the bankrupt's] interest was transferable, there must be noticed a distinction sought to be drawn between the interest of the [bankrupt] and the fruits of that interest, i. e., the moneys paid on the policy. No such distinction is tenable, for one who has an interest in property, even though contingent, owns not only the contingency but everything that may flow therefrom. He that owns a tree owns the fruit thereof."

In discussing this problem as an exception to the general rule that a trustee does not take title to property acquired by the bankrupt after the date of filing the petition, Collier observes: [22]

" * * * the trustee is vested with title to the *proceeds* of any property that could have been considered the property of the bankrupt at the time of the petition."

The same commentator says: [23]

"Accordingly, it has been stated that 'money or other property which is the proceeds of property owned by

---

**20.** It is arguable that the Superior Court injunctions might be construed as impairing plaintiff's power to transfer her interest in the insurance on the date the bankruptcy petition was filed. No more weight should be given to the injunctions in determining the transferability of plaintiff's interest than was given the Superior. Court attachments of that interest in determining whether the interest was open to levy. Supra, pp. 945, 946.

**21.** In Re Judson, 188 F. 702, 705 (S.D. N.Y.1911), aff'd on other grounds, 192 F. 834 (2 Cir. 1912), aff'd, 228 U.S. 474, 33 S.Ct. 568, 57 L.Ed. 927 (1912). See also, Wolter v. Johnston, 34 F.2d 598 (3 Cir. 1929), cert. denied, 280 U.S. 598, 50 S.Ct. 153, 74 L.Ed. 650 (1930).

**22.** 4 Collier on Bankruptcy § 70.07, at 986 (14th ed. 1961).

**23.** 4 Collier on Bankruptcy § 70.09, at 999 (14th ed. 1961).

the bankrupt at the time the petition was filed is not after-acquired and vests in the trustee.' "

In view of the Court's holding that Mrs. Klebanoff's interest in the insurance vested in the trustee pursuant to Section 70 (a)(5) on the date the bankruptcy petition was filed, it is unnecessary to pass on the trustee's alternative claims.

**(C) Tradesmens, as a judicial lien creditor of plaintiff, has no rights to the insurance proceeds other than as a general creditor of plaintiff's bankrupt estate.**

 Tradesmens' position is aptly described by its counsel as an ambivalent one in this action: as a general creditor of Mrs. Klebanoff, it has an interest in establishing that the trustee of her bankrupt estate is entitled to the insurance proceeds; alternatively, if her trustee is not entitled to the insurance proceeds, it has an interest in having the entire insurance proceeds applied to reduction of the bankrupt's debt to Tradesmens.[24]

In support of its alternative claim, Tradesmens argues that Mrs. Klebanoff's interest in the insurance "would be similar to property which is held to be exempt under the Bankruptcy Act" and that Tradesmens, having effectively sequestered this property interest prior to the date of bankruptcy for satisfaction of the debt owing to it, is entitled to a priority in the proceeds of the insurance.[25] The first premise of Tradesmens' alternative claim has been rejected by the Court's holding that Section 38–161 of the Connecticut General Statutes does not exempt the insurance from claims of a beneficiary's creditors. Supra, pp. 943, 944. Tradesmens' alternative claim must fail.

To the extent that Tradesmens has argued that the trustee of Mrs. Klebanoff's bankrupt estate is entitled to the insurance proceeds, its claim is sustained. Tradesmens' only rights to the insurance

proceeds are the rights of a general unsecured [26] creditor of Mrs. Klebanoff's bankrupt estate.

**(D) Mrs. Klebanoff, as named beneficiary under the insurance policies, is not entitled to the insurance proceeds.**

Plaintiff's claim is based solely on her rights as the named beneficiary under the policies. She would be entitled to the proceeds only if the other claims considered above were held invalid. The Court having held that the trustee of her bankrupt estate is entitled to the insurance proceeds, the claim of plaintiff as the named beneficiary must fail.

Having considered the claims of the respective adverse claimants to the insurance proceeds held by Mutual as stakeholder, the Court concludes that partial summary judgment should be granted adjudging that Flynn as trustee in bankruptcy of Mrs. Klebanoff is entitled to the insurance proceeds. 6 Moore's Federal Practice ¶¶ 56.12 and 56.13 (2d ed. 1953).

## II

### RIGHTS TO COSTS AND COUNSEL FEES OF MUTUAL AS INTERPLEADER

Mutual claims it is entitled to recover its costs and counsel fees in connection with the interpleader counterclaim proceedings. Plaintiff and Tradesmens oppose this claim on the grounds that Mutual contested the amount of interest due on the interpleaded sum; that Mutual is disputing plaintiff's double indemnity claim which has been reserved for later determination; and that Mutual reasonably could have foreseen suits of this nature arising as a result of the business in which it is engaged.

 The Court has broad discretion, following equity practice, in determining whether to award counsel fees and costs to the interpleader and, if so, from what source they should be paid.[27] Ap-

---

24. Tradesmens' Brief, p. 1.

25. Id. at 18–19.

26. Tradesmens procured its lien on July 6, 1962, within four months of the filing of the bankruptcy petition against both Klebanoffs. On July 6, 1962 both Klebanoffs

were insolvent. Tradesmens' liens on the policies, therefore, are null and void under Section 67(a) of the Bankruptcy Act.

27. See generally, 3 Moore's Federal Practice ¶22.16, at 3051–3054 (2d ed. 1964).

plicable state law,[28] while relevant in guiding the Court in the sound exercise of its discretion, is not conclusive upon a federal court.[29]

▮▮▮ It is well settled in the federal courts that costs, counsel fees and expenses may be awarded to an interpleader who participates in litigation as a mere stakeholder;[30] but if there is a contest between the interpleader and the adverse claimants as to the correctness of the amount deposited or as to any interest of the interpleader in the fund, the court, in the absence of special circumstances, will not award costs, counsel fees or expenses in connection with that contest.[31]

▮▮▮ In the instant case, the Court is satisfied that Mutual has benefited the claimants by promoting early litigation as to ownership of the fund, thus preventing its dissipation; that Mutual is a mere stakeholder and has no interest in the fund; that there was no contest between Mutual and the adverse claimants as to the correctness of the principal sum of $58,896.09 to be deposited (although there was a dispute as to the amount of interest to be deposited, which dispute was settled by stipulating that the sum of $1,666.70 also should be deposited, thus resolving all claims for interest on the principal sum prior to the stipulation); that it is feasible to segregate out of Mu-

tual's total costs, counsel fees and expenses those which were strictly limited to the interpleader counterclaim proceedings and exclusive of those incurred in disputing the amount of interest to be deposited and in disputing plaintiff's double indemnity claim;[32] and that Mutual should not have to pay counsel fees in order to guard itself against the harassment of multiple litigation.[33]

Accordingly, the Court holds that Mutual is entitled to recover out of the interpleaded sum its costs, reasonable counsel fees and expenses limited strictly to the interpleader counterclaim proceedings. The Court excludes any recovery by Mutual of costs, counsel fees or expenses incurred in disputing the amount of interest to be deposited and in disputing plaintiff's double indemnity claim.

### III

### ADJUDICATION OF FEDERAL TAX CLAIMS AGAINST BANKRUPT ESTATE OF MRS. KLEBANOFF TO PROCEED IN BANKRUPTCY COURT

On November 12, 1963 notice was given to Mrs. Klebanoff of the assessment of federal income tax deficiencies totalling $66,617.32 for alleged unpaid income taxes, interest and penalties for the taxable years 1960 and 1961 of both Klebanoffs.[34] Shortly prior to notifying

28. A Connecticut state court has discretion to tax costs and to allow counsel fees and disbursements, payable out of the fund or property, in an action in the nature of an interpleader. Conn.Gen.Stat. § 52–484 (1958).

29. Bank of China v. Wells Fargo Bank & Union Trust Co., 209 F.2d 467, 476–477 (9 Cir. 1953), 48 A.L.R.2d 172.

30. A/S Krediit Pank v. Chase Manhattan Bank, 303 F.2d 648 (2 Cir. 1962); Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp., 306 F.2d 188, 194–195 (9 Cir. 1962); Bank of China v. Wells Fargo Bank & Union Trust Co., supra note 29; Mutual Life Ins. Co. v. Bondurant, 27 F.2d 464 (6 Cir. 1928).

31. Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp., supra note 30, at 193–195.

32. Mutual's counsel state in their brief: "Mutual seeks only an amount for such

legal services as are related to the interpleader. Itemized time records have been kept by counsel, which will facilitate a proper allocation to the interpleader claim."

33. Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp., supra note 30, at 193–195.

34. Supra note 3.
 The deficiency notice to Mrs. Klebanoff stated:
 "The deficiency in tax is being assessed against you under the provisions of existing internal revenue laws applicable to bankruptcies and receiverships. Accordingly, no petition for redetermination may be filed with the Tax Court of the United States after the adjudication of bankruptcy or the appointment of a receiver."

Mrs. Klebanoff of the deficiency assessments, the government filed claims based on the deficiency assessments against her bankrupt estate in the Bankruptcy Court.

Some six months later, and after the instant motion for partial summary judgment was filed, the government moved to intervene in the present case. The Court granted the motion and allowed the government to file its complaint in intervention upon the condition that proceedings thereon be held in abeyance until 20 days after the Court's determination of the pending motion for partial summary judgment.[35]

The government's motion to intervene in this action was grounded upon two claims:

(1) that the interpleaded life insurance proceeds were under the jurisdiction of this Court, not the Bankruptcy Court; and

(2) that if this Court were to grant partial summary judgment in favor of plaintiff and distribute the interpleaded sum to her, the government's tax liens would be ineffective.

In view of the Court's determination on the motion for partial summary judgment that Mrs. Klebanoff's interest in the insurance vested by operation of law pursuant to Section 70(a) (5) of the Bankruptcy Act in the trustee of her bankrupt estate on August 22, 1962 (supra, p. 948), it is her bankruptcy trustee, not plaintiff, who is entitled to the insurance proceeds and the interpleaded sum is, and has been since August 22, 1962, under the jurisdiction of the Bankruptcy Court. The grounds for allowing the government to intervene in the instant action, accordingly, have been removed by the Court's decision on the motion for partial summary judgment.

██ Section 64(a) (4) of the Bankruptcy Act, which determines the priority and order of payment of the debts of a bankrupt, provides in pertinent part:

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (4) taxes legally due and owing by the bankrupt to the United States * * * *And provided further*, That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court;"

The second proviso of Section 64(a) (4), set forth above, relates only to taxes which, as here, accrued before bankruptcy.[36] The purpose of the second proviso of Section 64(a) (4) has been stated as follows:[37]

"* * * to afford a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings might delay conclusion of the bankruptcy proceedings interminably. Moreover, the provision is designed to prevent inequities which might otherwise be perpetuated at the expense of the general creditors."

██ It is well settled that where a controversy arising in the course of a bankruptcy proceeding "is one concerning property in the actual or constructive possession of the bankruptcy court, that

---

35. Supra note 3.

36. 3 Collier on Bankruptcy § 64.407 [2], at 2212 (14th ed. 1964). There is some authority indicating that the second proviso applies to taxes secured by *valid* liens. State of Texas v. Porter, 74 F.2d 269 (5 Cir. 1934), cert. denied, 294 U.S. 727, 55 S.Ct. 637, 79 L.Ed. 1257 (1934); Matter of Florence Commercial Co., 19 F.2d 468 (9 Cir. 1927), cert. denied, 275

U.S. 542, 48 S.Ct. 37, 72 L.Ed. 415 (1927); 3 Collier, op. cit. supra, ¶64.403, at 2149–2150.

37. 3 Collier, op. cit. supra, § 64.407 [1], at 2186. Accord, Cohen v. United States, 115 F.2d 505 (1 Cir. 1940), where the court held that the second proviso gives the Bankruptcy Court *exclusive* plenary power to determine the amount or legality of any tax assessed against the bankrupt.

court may adjudicate summarily all rights and claims pertaining thereto."[38]

■ The Court orders that the Bankruptcy Court proceed to hear and determine all issues involved in the claims filed in that court by the government based on its deficiency assessments against the bankrupt estate of Mrs. Klebanoff.

## IV

### DIRECTION FOR ENTRY OF FINAL JUDGMENT PURSUANT TO RULE 54(b) ON INTERPLEADER COUNTERCLAIM

■ This case appears to the Court to be one clearly appropriate, pursuant to Rule 54(b), Fed.R.Civ.P.,[39] for an express direction for entry of final judgment on the interpleader counterclaim and for an express determination that there is no just reason for delay.[40] Accordingly, the Court so certifies.

At least three distinct claims, or classes of claims, for relief were presented in this action:

(1) Claims for death benefits under life insurance policies (the rights to which have been determined on the interpleader counterclaim);

(2) Claims under an accident and sickness insurance policy and double indemnity claims under life insurance policies (such claims being dependent upon a determination whether Mr. Klebanoff's death was caused by accident);

(3) Claims based on federal income tax deficiency assessments against Mrs. Klebanoff's bankrupt estate (which claims are to be heard and determined by the Bankruptcy Court).

In this action involving multiple claims, therefore, the Court has granted summary judgment on the interpleader counterclaim, thus fully adjudicating one or more but fewer than all the claims in the action;[41] the action presented more than one "claim for relief" and "at least one of those claims has been finally determined";[42] the claims presented were "entirely distinct";[43] and the certification here made by the Court "cannot be used to appeal a part of a single claim or * * * to test a single legal theory of recovery."[44]

---

38. 2 Collier on Bankruptcy § 23.04 [2], at 453 (14th ed. 1964) and cases there cited. The summary jurisdiction of the Bankruptcy Court in this regard is in no way diminished by the grant of plenary jurisdiction to United States District Courts in Section 23(a) of the Bankruptcy Act.

39. Rule 54(b):
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

40. 6 Moore's Federal Practice ¶¶54.40, 54.41[1], 56.20[3], 56.20[4], 56.21[1] (2d ed. 1953).

41. 6 Moore's, op. cit. supra ¶54.37; Republic of China v. American Express Co., 190 F.2d 334, 338–340 (2 Cir. 1951).

42. Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339, 341 (2 Cir. 1963), cert. denied, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963). Cf. Original Ballet Russe v. Ballet Theatre, 133 F.2d 187, 189 (2 Cir. 1943); Leonidakis v. International Telecoin Corp., 208 F.2d 934, 935–936 (2 Cir. 1953); Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., 243 F.2d 795, 796 (2 Cir. 1957).

43. Dyer v. MacDougall, 201 F.2d 265, 267 (2 Cir. 1952).

44. Schwartz v. Eaton, 264 F.2d 195, 196–197 (2 Cir. 1959).

There is no just reason for delay in entering judgment on the interpleader counterclaim. The issues on the counterclaim are entirely distinct from those involved in the claims under the accident and sickness insurance policy and the double indemnity claims under the life insurance policies; the latter, to be tried to a jury, turn upon whether the insured died an accidental death. The counterclaim issues likewise are entirely distinct from those involved in the government's tax claims against Mrs. Klebanoff's bankrupt estate. Different parties are involved in each of the three sets of claims; neither the plaintiff nor one of the defendants on the counterclaim is involved in the other two sets of claims. Moreover, an immediate appeal by any aggrieved party from the Court's summary judgment on the interpleader counterclaim will be in the interest of justice; such appeal will in no way interfere with the adjudication of the remaining claims; on the contrary, an early appellate decision on the counterclaim issues will in all likelihood facilitate prompt resolution of the remaining claims in a case where every consideration of fairness and justice calls for a prompt conclusion of the case.

## CONCLUSIONS

(1) On the interpleader counterclaim, summary judgment is to be entered adjudging that Flynn as trustee in bankruptcy of Mrs. Klebanoff is entitled to the insurance proceeds.

(2) On the interpleader counterclaim, Mutual is entitled to recover out of the interpleaded sum its costs, reasonable counsel fees and expenses—limited strictly to the interpleader counterclaim proceedings.

(3) Adjudication of the federal tax claims against the bankrupt estate of Mrs. Klebanoff is to proceed in the Bankruptcy Court.

(4) On the interpleader counterclaim, final judgment is directed to be entered pursuant to Rule 54(b),

there being no just reason for delay.

## RULE 54(b) CERTIFICATE

With respect to the issues determined by summary judgment on the interpleader counterclaim pursuant to a Memorandum of Decision filed this date and to which this Certificate is appended, it is

CERTIFIED, in accordance with Rule 54(b), Fed.R.Civ.P.:

(1) That the Court has directed the entry of final judgment on the interpleader counterclaim; and

(2) That the Court has determined there is no just reason for delay.