WILLIAM F. CONNELLY, TAX COMMISSIONER *v.* VIRGINIA B. WELLS, EXECUTRIX (ESTATE OF DONALD B. WELLS)

O'SULLIVAN, WYNNE, DALY and PHILLIPS, Js.[1]

---

[1] By agreement of counsel the case was argued before and decided by four judges.

530

Argued June 16—decided June 27, 1955

*William E. Egan,* inheritance tax attorney, with whom, on the brief, were *John J. Bracken,* attorney general, and *Frederic W. Dauch,* first assistant tax commissioner, for the plaintiff.

*Bruce W. Manternach,* with whom was *Kenneth W. Weeks,* for the defendant.

O'SULLIVAN, J. This reservation raises the question whether the plaintiff, in computing the succession tax upon the estate of the defendant's decedent, should allow, as a deduction from the gross taxable estate, the amount representing the balance due on a note of the decedent, when the note was secured by an assignment of his life insurance policies, which were payable on his death to his wife.

The parties have stipulated as to these facts: Donald B. Wells, a resident of West Hartford, died on December 22, 1953, leaving a will which was admitted to probate in the Probate Court for the district of Hartford. Since 1936, he had been continuously indebted to The Hartford-Connecticut Trust Company for money borrowed on periodically renewed promissory notes. The last of these notes, executed by him on September 8, 1953, was in the amount of $51,000 and was payable on December 30, 1953. It was secured, as many of the prior notes had been, by assignments to the bank of eleven life insurance policies having a face value of $85,000. All the policies were written on his own life and, subject only to the rights of the bank as assignee, were payable at death to his wife, Virginia B. Wells, who is the defendant executrix. The decedent reserved from the assignments (1) the right to collect disability payments, (2) the right to change the beneficiary, and (3) the right to elect any optional mode of settlement permitted by the policies. At the time of his death the unpaid balance on the last note was $50,963.20.

Early in January, 1954, the bank presented to the defendant a written claim for $50,963.20 against the decedent's estate. On January 8, the defendant acknowledged receipt of and allowed the claim. On

the same day, she, as beneficiary, obtained, through co-operation with the bank, two checks totaling $50,528.07 from the insurers which had issued five of the eleven policies. These checks, supplemented by sufficient cash of her own to make up the deficit, she then turned over to the bank in full payment of its claim against the estate of the decedent. The remaining six policies were thereupon returned by the bank to her in her individual capacity.

Paragraph first of the decedent's will contained the following: "I direct my Executrix to pay as soon as possible, from my Estate, all my just debts (except those secured by Real Estate Mortgage) . . . ." In her succession tax return, the defendant incorporated the item of $50,963.20 as a deduction from the decedent's gross taxable estate for the purpose of ascertaining the net taxable estate. This deduction was disallowed by the plaintiff in his computation. The questions upon which our advice is sought are stated in the footnote.[2]

---

[2] "a. Did the fact that the debt of the decedent was secured by the assignments of life insurance policies, payable to a named beneficiary, make this debt non-deductible in computing the Connecticut Succession Tax under the provisions of Section 2030 of the General Statutes, Revision of 1949?

"b. Did the assignments of the life insurance policies convert the proceeds of the policies into a taxable asset, which should be included in the inventory of the decedent's estate, even though such assignments reserved to the assignor (1) the right to collect disability benefits, and (2) the right to designate and change the beneficiary, and (3) the right to elect any optional mode of settlement?

"c. Did the fact that the life insurance policies, payable to a named beneficiary, were assigned as collateral security for a lawful debt of the decedent, make them a taxable asset of the decedent's estate under the provisions of the Connecticut Inheritance and Succession tax statutes?

"d. If the proceeds of the life insurance policies were not taxable assets in the decedent's estate, did the fact that the claim of The Hartford-Connecticut Trust Company was actually paid in part out

The succession tax is computed upon the net taxable estate of the decedent. General Statutes, Cum. Sup. 1953, § 926c. The net taxable estate is ascertained by deducting various specified items from the gross taxable estate. One of these items is described as "[d]ebts of the [decedent] which constitute lawful claims against his estate." § 923c (a). The contention of the plaintiff is that the deduction of $50,963.20 entered by the defendant in her succession tax return cannot be allowed because to do so would require him, as he puts it, "to acknowledge the existence of a claim against the estate when no such claim does exist." This contention is unsound and undoubtedly springs from a misapprehension of the status of the insured in his dealings with the bank.

It is universally recognized in financial circles that a policy of life insurance is a species of property that is acceptable, usually to the amount of the cash surrender value of the policy, as collateral to secure a debt. The case at bar does not present an instance of a so-called loan made by an insurer to its insured against a policy on his own life. A transaction of that type does not culminate in a true loan in the sense of creating a debt on the part of the insured. *Board of Assessors* v. *New York Life Ins. Co.*, 216 U.S. 517, 522, 30 S. Ct. 385, 54 L. Ed. 597; *Wagner* v. *Thieriot*, 203 App. Div. 757, 762, 197 N.Y.S. 560. In the case at bar, the transactions between the decedent and the bank made the one a debtor and the other a creditor, and the status of each was not altered because the property pledged consisted of insurance policies rather

of the proceeds of said policies make the claim non-deductible to the extent of such payment in computing the Connecticut Succession Tax?"

than, let us say, stocks and bonds. The assignment amounted to no more than a method of assuring the bank that, should the decedent fail to pay the note, the proceeds of the policies, if he had died, or their cash surrender value, if he lived, could be applied in repayment of the loan. Since his agreement with the bank did not provide otherwise, the decedent remained primarily liable and the policies could be utilized only in the event of nonpayment of the note. When he died, his primary obligation passed to his estate, and the bank had the right, if not the duty, of presenting a claim against the estate before proceeding to liquidate the debt through the collateral it still continued to hold.

Collateral security, in bank parlance, means some security additional to the personal obligation of the borrower. Black's Law Dictionary (4th Ed.) p. 328; *Barbin* v. *Moore,* 85 N.H. 362, 374, 159 A. 409; *Smith* v. *Coleman,* 184 Va. 259, 270, 35 S.E.2d 107. If the collateral securing the debt for which a deduction is claimed by the defendant is owned by the decedent, it would be included in the items going to make up his gross taxable estate. But if for any reason it is not owned by him and, hence, is not so included, the deductibility of the debt in ascertaining the net taxable estate is not affected, since the debt, no matter how secured, is nonetheless a debt and, as such, falls squarely within the provisions of § 923c (a). *Kershaw Estate,* 352 Pa. 205, 206, 42 A.2d 538.

We might well end the opinion at this point. But the plaintiff advances the argument that the deduction is improper because "the gross taxable estate was not reduced by one cent to satisfy [the] indebtedness to the bank." What apparently bothers the plaintiff is the fact that the note was paid

almost entirely from the proceeds of five of the policies. It does not follow that the estate thereby can escape liability. The stipulation of facts discloses that the insured had reserved the right to change the beneficiary. But the interest of his wife, as the named beneficiary in all of the policies, was vested, since the right to change, if it existed at all, had not been exercised. *Allen* v. *Home National Bank,* 120 Conn. 306, 310, 180 A. 498; *Neary* v. *Metropolitan Life Ins. Co.,* 92 Conn. 488, 492, 103 A. 661; *C. E. Shepard & Co.* v. *New York Life Ins. Co.,* 87 Conn. 500, 504, 89 A. 186. When the policies were assigned to the bank, the beneficiary's right to the proceeds was impaired only so far as necessary to carry out the promise of the insured to repay the loan. Subject solely to that limited impairment, the beneficiary remained the owner of the right to receive the proceeds upon the death of the insured. That right was never divested. *Barbin* v. *Moore,* 85 N.H. 362, 372, 159 A. 409. After the proceeds were used to pay the debt, the beneficiary became subrogated to all the rights which the bank had against the estate of the decedent. *Russell* v. *Owen,* 203 N.C. 262, 267, 165 S.E. 687; *Katz* v. *Ohio National Bank,* 127 Ohio St. 531, 539, 191 N.E. 782; note, 83 A.L.R. 77, 82.

We answer "No" to each of the questions reserved.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.