Sayre W. KLEBANOFF, Plaintiff-Appellant,

United States of America, Intervening Plaintiff-Appellee,

v.

The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant and Plaintiff on Interpleader Counterclaim,

v.

Sayre W. KLEBANOFF, Defendant on Interpleader Counterclaim,

The Tradesmens National Bank of New Haven, and W. Paul Flynn, Trustee in Bankruptcy, Estates of Sayre W. Klebanoff and M. Edward Klebanoff, Defendants-Appellees on Interpleader Counterclaim.

No. 333, Docket 30011.

United States Court of Appeals Second Circuit.

Argued May 10, 1966.

Decided June 27, 1966.

Ira B. Grudberg, New Haven, Conn. (Jacobs, Jacobs, Jacobs & Jacobs, New Haven, Conn., on the brief), for plaintiff-appellant.

Kenneth L. McCardle, Dept. of Justice (Jon O. Newman, U. S. Atty., for District of Conn., Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson and I. Henry Katz, Attys., Dept. of Justice, on the brief), for intervening plaintiff-appellee.

Lawrence W. Iannotti, New Haven, Conn. (Richard H. Bowerman, Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., on the brief), for Tradesmens Nat. Bank of New Haven, defendant-appellee.

James T. Brennan, West Haven, Conn. (Charles H. Fischer, Fischer & Fischer, West Haven, Conn., on the brief), for W. Paul Flynn, Trustee in Bankruptcy, Estates of Sayre W. Klebanoff and M. Edward Klebanoff, defendant-appellee.

Before WATERMAN, KAUFMAN and ANDERSON, Circuit Judges.

KAUFMAN, Circuit Judge:

Mrs. Sayre W. Klebanoff appeals from a partial summary judgment award of $58,896.09 in life insurance proceeds plus interest to W. Paul Flynn as trustee in bankruptcy of Mrs. Klebanoff's bankrupt estate. The District Judge, who was confronted with a complex factual setting, dealt thoroughly with the manifold contentions of the multiple parties and, as a result, the issues raised here already have been substantially pruned and re-fined for appellate consideration. Because of our disagreement, however, with the disposition below of a central issue in the case, we remand for consideration in the light of this opinion.

## I.

The material facts were undisputed and are extensively set forth in Chief Judge Timbers' reasoned opinion reported at 246 F.Supp. 935 (D.Conn.1965).[1] We shall, therefore, merely summarize so much of the facts as are necessary to shed light on the legal issues presented.

Mrs. Klebanoff's husband, M. Edward Klebanoff (Edward), died on November 9, 1962. Prior to that time, he was the owner of ten life insurance policies issued by the Mutual Life Insurance Company of New York (MONY). Although Mrs. Klebanoff was the named beneficiary under each of these insurance contracts, Edward reserved all significant powers over them, including the right to designate a different beneficiary.[2]

In the summer of 1962, the Klebanoff's financial underpinnings began to give way. Having borrowed substantial sums from the Tradesmens National Bank of New Haven (Tradesmens) on their promissory notes, both Klebanoffs defaulted in payments of principal and interest aggregating in excess of $75,000. On July 6, August 9 and September 7, 1962, Tradesmens commenced three actions in the Superior Court for New Haven County against the Klebanoffs and MONY seeking to recover the sums alleged to be due on the notes. In connection with this litigation, certain attachments and garnishments were effected and injunctions were obtained against both Klebanoffs and MONY temporarily enjoining them from "paying or permitting or causing to be paid the cash surrender value of any policy of insurance issued by [MONY] on the life of M. Edward Klebanoff and against changing or caus-

1. The facts were established by admissions to the pleadings, answers to interrogatories, a stipulation between the parties, exhibits submitted to the court and the records of related proceedings in the Bankruptcy Court and the Superior Court for New Haven County.

2. The net proceeds of these policies due and payable upon Edward's death, it was agreed, totaled $58,896.09 plus interest

ing or permitting to be changed the beneficiary of any said policy of insurance or loaning money or causing money to be loaned against the security of any such policy or its cash surrender value and against pledging, assigning, transferring or in any other manner disposing of any of said policies or causing or permitting the same to be pledged, assigned, transferred or in any other manner disposed of."

Meanwhile, several other creditors of the Klebanoffs filed an involuntary petition in bankruptcy against them. As a result, the Klebanoffs were adjudicated bankrupt as of August 22, 1962 and W. Paul Flynn became trustee in bankruptcy of each of their estates.

On July 9, 1963 (Edward having died the previous fall), Mrs. Klebanoff commenced the instant action against MONY seeking to recover, as named beneficiary, the proceeds of the ten life insurance policies which MONY had issued on her husband's life. In its role as stakeholder, MONY interpleaded by way of counterclaim, the adverse claimants to the proceeds of these policies—Mrs. Klebanoff, Tradesmens, and Flynn, as trustee in bankruptcy of the bankrupt estates of both Klebanoffs. The parties agreed to reserve other issues for subsequent determination and Mrs. Klebanoff moved for partial summary judgment.[3]

The District Judge determined that Flynn, as trustee of Mrs. Klebanoff's bankrupt estate, was entitled to the insurance proceeds. In so deciding, he rejected the claims of Tradesmens, Mrs. Klebanoff and Flynn, as trustee of Edward's bankrupt estate. And, although

the ramifications were far more complicated below, on appeal, the dispute has evolved into a contest for the insurance proceeds between Mrs. Klebanoff and Flynn, as trustee of her estate. In this Court, Tradesmens supported the trustee's position and the trustee, in his capacity as representative of Edward's estate, in turn has not pressed his claim to the insurance proceeds.[4]

## II.

In less than sparkling clear prose, section 70(a) (5) of the Bankruptcy Act, 11 U.S.C. § 110(a) (5), defines the conditions upon which a trustee may reach property claimed by a bankrupt such as proceeds of the life insurance policies in which Mrs. Klebanoff has asserted an interest:

> The trustee of the estate of a bankrupt * * * upon his * * * appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * [:] property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *.

This provision has been elucidated by Collier who, citing authority, states:

> If a policy [of insurance] in existence at the time of bankruptcy names

---

**3.** To further confuse an already complicated proceeding, the United States intervened and asserted a claim based on federal tax liens against Mrs. Klebanoff for alleged unpaid income taxes, interest and penalties owed by the Klebanoffs totaling $66,617.32 for the taxable years 1960 and 1961. Because of our disposition of this case, the government's claim to the funds will have to be considered on remand. In this court, the United States has attempted to protect its liens by filing a brief as "appellee and as amicus curiae." So, without ex-

pressing any opinion on the merits of the government's claim, the victory on this appeal may ultimately prove to be pyrrhic.

**4.** We affirm Chief Judge Timbers' denial of recovery of the insurance proceeds by Tradesmens and by Flynn, as trustee of Edward's bankrupt estate. These rulings were not challenged on appeal and there is no indication that they were erroneous. We also leave undisturbed the award to MONY of costs, reasonable counsel fees and expenses limited strictly to the interpleader counterclaim proceedings.

the bankrupt as beneficiary without any reservation by the insured of the power to change such designation, the bankrupt has a *vested* though potential interest that vests in the trustee as an asset of the estate, subject of course, to the conditions that the property is transferable or leviable and is not exempt. 4 Collier on Bankruptcy, ¶ 70.23 at 1198 (14th ed. 1964). (Emphasis added.)

Thus, the principal issue presented is whether Mrs. Klebanoff possessed a "vested" interest in the policies issued on her husband's life. If her interest was "vested" and, in addition, satisfied the other requirements of section 70(a) (5), the trustee could properly step into her shoes and claim the insurance proceeds. If, however, this property was not "vested," the trustee had no basis for asserting an interest in the proceeds and the property would have passed to Mrs. Klebanoff, subject, of course, to proper tax claims, etc.

In determining the nature of Mrs. Klebanoff's interest in the insurance proceeds, we must look to Connecticut law. 4 Collier on Bankruptcy, ¶ 70.15 at 1034 (14th ed. 1964). But, since no Connecticut case directly in point has come to our attention, our decision will be aided by reasoned application of other authorities, albeit peripheral.

Allen v. Home National Bank, 120 Conn. 306, 310, 180 A. 498, 500 (1935), cited for our consideration by Tradesmens and Flynn, does not support their position but actually undermines it. The Supreme Court of Errors of Connecticut described the wife's interest as beneficiary of her husband's life insurance policies in Allen as

* * * more than a mere expectancy. Where no right to change is reserved in the policy, the rights of the named beneficiary cannot be impaired by the assured and the company without his assent. * * * [w]here, as here, the right to change is reserved to the assured, *the interest of the beneficiary is yet deemed to be vested, although qualified in that it is subject to be defeated by an exercise of the right reserved.* * * * "So long as the power of defeasance is not exercised, [beneficiaries] stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies." (Emphasis added.)

In the instant case, Edward at all times reserved the right to change the beneficiary of his policies. Thus, even under the *Allen* formulation, Mrs. Klebanoff did not possess an absolute "vested" interest in her husband's insurance; rather her right to receive the proceeds of these policies was "vested subject to divestment." For this reason, O'Connell v. Brady, 136 Conn. 475, 72 A.2d 493 (1950) and Connelly v. Wells, 142 Conn. 529, 115 A.2d 444 (1955) also offer little solace to Tradesmens and Flynn.

The federal courts have long recognized that when state law is utilized to define property rights in a federal statute, the substance and not the characterization of those rights must be examined in order to determine their true nature. See, e. g., In re Hogan, 194 F. 846 (7th Cir. 1912).[5] And, recently, a wife's interest in her husband's insurance policies was held to be subject to tax liens arising in favor of the United States against the

---

5. *Hogan* dealt with Wisconsin law which, not unlike Connecticut, described a beneficiary's interest in another's insurance policies as "vested * * * subject to be divested" where the insured reserved the power to designate a different beneficiary. Considering a question similar to that confronting us, the Court was persuaded that catchwords or labels were not decisive on the basic issue of whether the beneficiary possessed a "vested" interest:

"* * * [W]ith the interest of the beneficiary thus settled, as dependent on the option of the insured during his lifetime, these mentions thereof as 'a vested interest subject to be divested' at the will of the insured, are without force * * * to confer or impose property right[s] * * * within the purview of the Bankruptcy Act." 194 F. at 851.

owner-husband during his lifetime because "[t]o whatever extent the policies constituted 'property' or 'rights to property,'" they belonged, under Connecticut law, to the husband at the time the liens attached. United States v. McWilliams, 234 F.Supp. 117, 121 (D.Conn.1964).

The *ratio decidendi* of these cases leads us to the conclusion that if the Connecticut courts were squarely called upon to rule on the facts presented here, they would conclude, as we do, that Edward's reservation of the right to change the beneficiary of his insurance policies deprived Mrs. Klebanoff of an absolute vested interest in them. We have found nothing to indicate that Connecticut would depart from the prevailing precept that where an insurance contract "names the bankrupt [i. e., Mrs. Klebanoff] as beneficiary, subject to change by the insured, the bankrupt has no vested interest during the life of the insured." 4 Collier on Bankruptcy, ¶ 70.23 at 1198–99 (14th ed. 1964). Indeed, it appears that once it is clear that a beneficiary is entitled to the proceeds of insurance policies, Connecticut applies a policy of protecting these proceeds by exempting them, under certain circumstances, from incursions by succession and inheritance taxes. See Conn.Gen.Stat.Anno. § 12–342.

Nor are we persuaded that Mrs. Klebanoff's interest became vested by virtue of the temporary injunctions obtained by Tradesmens in the Superior Court for New Haven County prohibiting Edward from changing the beneficiary of his policies. Upon proper application a temporary injunction "may be dissolved or modified." Conn.Gen.Stat.Anno. § 52–475. Thus, prior to his death there remained the possibility that Edward could have taken steps to dissolve the injunctions. This, he might have accomplished by several methods such as posting a bond, refinancing his indebtness or inducing someone to guarantee his obligations. While it is true that Edward did not pursue any of these steps, the fact remains that so long as these or other methods of dissolution existed, the injunctions were never fixed or permanent. Consequently, the existence of these temporary injunctions did not change the nature of Mr. Klebanoff's interest. For these reasons, the trustee was not authorized pursuant to section 70(a) (5) to take over Mrs. Klebanoff's claim to the proceeds of her husband's life insurance policies.[6]

## III.

It is also urged that even if section 70(a) (5) is inapplicable, the trustee should prevail under the more general language of section 70(a). That section in pertinent part provides:

> All property, wherever located, except insofar as it is property which is held to be exempt, which vests in the bankrupt within six months after bankruptcy *by bequest, devise or inheritance* shall vest in the trustee * * *.

Tradesmens and Flynn do not dispute that the property transferred by virtue of the insurance contracts did not pass by "bequest, devise or inheritance" as those words have been defined. They maintain, however, that in this modern age, sophisticated methods have been devised to transfer wealth from one generation to the next and that the insurance policy route is one way to accomplish this objective. Therefore, they say, these technical property terms in section 70(a) should be interpreted broadly to encompass insurance proceeds. This argument is spurious, for, in this case, we are construing a bankruptcy statute and not embellishing principles of common law. Our guidelines of interpreta-

---

**6.** In light of our conclusion that section 70a (5) is inapplicable because Mrs. Klebanoff's interest in the insurance policies was not vested, it is unnecessary to determine whether the other elements of that section were satisfied since the trustee cannot recover in any event. Similarly, it is not necessary for us to reach the question whether the trustee was entitled to all the proceeds of the life insurance policies or merely their cash surrender value at the time of bankruptcy.

tion are relatively narrow; and, we are unpersuaded that we should rewrite the Bankruptcy Act in such drastic fashion when it was simple enough for Congress to have provided what Tradesmens and Flynn urge.

It is interesting, moreover, that Congress was not unaware of this suggested interpretation. Prior to 1938, when the Chandler Act amended the Bankruptcy statute, no future interest which a bankrupt might acquire as the result of a prospective bequest, devise or inheritance, vested in the trustee unless the testator or ancestor died prior to bankruptcy. Because of the inequitable results which this general rule produced, the drafters of the 1938 amendment spelled out a specific and limited exception to property passing by "bequest, devise or inheritance." 4 Collier on Bankruptcy, ¶70.27 at 1232–33 (14th ed. 1964). It would have been reasonable and appropriate for congress to have included insurance proceeds within this exception if it so desired. But, it failed to do so and in these circumstances we cannot and should not step into the breach.

Moreover, the liberal construction of section 70(a), which is urged here, has been considered and rejected by at least one Circuit. In Friedman v. McHugh, 168 F.2d 350 (1st Cir. 1948), it was claimed that the word "inheritance" as employed in section 70(a) encompassed the right of a bankrupt father to recover for the death of his son under the provisions of the Federal Employer's Liability Act (FELA) and, a fortiori, the right of the trustee of the father's bankrupt estate to claim these FELA death benefits. After a detailed analysis, the court concluded that it "would torture and distort the word 'inheritance' to make it apply to 'something that accrues as a result of death.'" 168 F.2d at 353. The construction urged by Tradesmens and Flynn is, in the language of Collier, "unsound." 4 Collier on Bankruptcy, ¶70.23 at 1199 (14th ed. 1964).

We have considered the other contentions advanced by the parties and find them either without merit or unnecessary of determination. The case is remanded for further proceedings not inconsistent with this opinion.