OREST T. DUBNO, COMMISSIONER OF REVENUE SERVICES *v.* I. GORDON COLBY, JR., ET AL., EXECUTORS (ESTATE OF DAVID W. MABEE)

SUPERIOR COURT     JUDICIAL DISTRICT     FILE No. 0195101
OF NEW HAVEN

Memorandum filed October 8, 1982

*Albert E. Sheary,* first assistant tax commissioner, and *Morris L. Klein,* inheritance tax attorney, for the plaintiff.

*Flanagan, Dorsey, Mulvey & Oliver,* for the defendants.

HERBERT S. MACDONALD, STATE REFEREE. This is an appeal taken by the commissioner of revenue services, pursuant to General Statutes §§ 12-367 (b) and 45-288, from the decree of the Probate Court for the district of North Haven, *Falsey, J.,* ordering that the commissioner recompute the Connecticut succession tax in the estate of David W. Mabee to exclude from the gross taxable estate the item entitled "Insurance dividends" on the commissioner's tax assessment. A hearing was held on June 2 and 3, 1982, before this court which considered a stipulation as to the facts, documents submitted jointly by the parties and the testimony of Edward Francis Dalton, vice president and actuary of the Phoenix Mutual Life Insurance Company. The only issue presented in the commissioner's appeal is whether the determination by the Probate Court that the insurance dividends were nontaxable was proper. See *Satti* v. *Rago,* 186 Conn. 360, 364–65, 441 A.2d 615 (1982).

David W. Mabee died on June 4, 1978, a resident of North Haven, Connecticut, and the Probate Court for the district of North Haven appointed I. Gordon Colby, Jr., Ferdinand E. Endriss and First Bank, the defendants herein, as the executors of his will. At the time of his death the life of the decedent was insured under two policies of insurance issued by Phoenix Mutual Life Insurance Company: policy No. 687,699, a whole life policy issued December 6, 1934, and policy No. 780,053, a whole life policy issued December 6, 1935. On October 31, 1947, the beneficiary designation on each policy was changed to "the executor, administrator or assignee of the insured."

Each of the insurance policies provided the following options: "Annual Participation in Surplus. At the end of the first and each succeeding policy year, this policy, while in force, will be credited with its share of

the divisible surplus which the company will annually determine and account for in a general distribution of surplus. Such apportionment of surplus will not be conditioned on the payment of any subsequent premium and will be applied in any one of the following methods which may be requested in the application; if no choice is made, the method employed will be the first. First: To be paid in cash (without interest). Second: To reduce the premiums due hereunder during the succeeding year; if none are due, the fourth method will be employed. Third: To purchase at net single premium rates participating paid up insurance additions, payable with this policy. Fourth: To accumulate at compound interest, at such rate for each year as may be assumed in the distribution of surplus for that year (guaranteed to be at least 3½% per annum). When such dividend fund or the reserve under any insurance additions credited to this policy, or both, together with the reserve under this policy, shall equal or exceed the reserve under a fully paid policy of the same kind and amount, the Company will convert this into a fully paid participating policy; or when such dividend fund and reserves equal or exceed the face amount of insurance hereunder, the Company will mature and pay this policy as an endowment; provided in either case a satisfactory request is made and this policy is duly released. On satisfactory release, the cash value of any insurance additions, computed as described in the cash value provision hereof, or any dividends credited to this policy, will be paid in cash."

The decedent elected the fourth option under both policies. He continued to pay the annual premium each year on each policy until his death and made no request to convert either policy to a fully paid, participating policy or endowment policy under the options available to him in paragraph fourth of the policies. Following his death, Phoenix Mutual paid the following amounts

to the estate on the two policies owned by him: $34,078.49 under policy No. 687,699; $17,081.69 under policy No. 708,053.

Thereafter, Phoenix Mutual prepared an Internal Revenue Service form 712, "Life Insurance Statement," for each policy, to file with the federal estate tax return, reporting the amounts paid as follows:

No. 687,699

| | |
|---|---:|
| Face amount of policy | $20,000.00 |
| Amount of accumulated dividends | 13,230.51 |
| Amount of post-mortem dividends | 505.68 |
| Amount of returned premium | 342.30 |
| Amount of proceeds payable in one sum | $34,078.49 |

No. 708,053

| | |
|---|---:|
| Face amount of policy | $10,000.00 |
| Amount of accumulated dividends | 6,602.47 |
| Amount of post-mortem dividends | 300.87 |
| Amount of returned premium | 178.35 |
| Amount of proceeds payable in one sum | $17,081.69 |

The executors included no amount attributable to the two insurance policies in the Connecticut succession tax return and on July 18, 1980, the commissioner of revenue services issued a succession tax assessment listing an increase of $21,160.18 for "Insurance dividends." That amount represented the total of all items included as "proceeds payable in one sum" on the federal forms 712 for each policy, except the face amount of those policies. The executors duly filed their objection to the addition of "Insurance dividends" in the amount of $21,160.18 to the taxable estate, claiming that they were exempt from tax under § 12-342 as "proceeds" of life insurance.

After due notice and hearing, Judge Edward T. Falsey, Jr., of the North Haven Probate Court, in a comprehensive and well-documented opinion, issued a

decree dated May 18, 1981, directing the commissioner to recompute the succession tax excluding from the gross taxable estate the item in the amount of $21,160.18 entitled "Insurance dividends." The commissioner has appealed to this court from that decree.

In order to shorten the testimony on this appeal, the parties stipulated that the Connecticut tax department (now the department of revenue services) changed its policy with respect to the taxation of accumulated dividends, post-mortem dividends and returned premiums in that prior to 1979 it taxed those items only when they were reported as taxable assets on the Connecticut succession tax return and did not seek to tax them if they were not reported as assets on the return, but that subsequently the department started actively to seek out and tax those items, even when not reported as assets on the return. The commissioner of revenue services has not promulgated any regulations relating to § 12-342, the applicable statute.

Section 12-342 provides in pertinent part as follows: "LIFE, ACCIDENT AND WAR RISK INSURANCE. The provisions of section 12-341 and 12-341b [defining taxable transfers] shall not apply to the proceeds of any policy of life . . . insurance payable to a named beneficiary or beneficiaries, including . . . the proceeds of any insurance policy of a decedent payable at his death to his estate, the executors of his will or the administrators of his estate. . . ." The statute does not define the key word "proceeds," nor does it distinguish or separate the face amount of a policy from other amounts paid to a beneficiary as part of a lump sum payment representing the net amount payable. It does not refer to accumulated dividends, to post-mortem dividends or to returned premiums and it would appear, accordingly, that the plain and unambiguous meaning of the phrase "proceeds of . . . life insurance," as employed in § 12-342, therefore, is the total amount received by the beneficiary from the company, without any such breakdown into component parts as is the contention of the commissioner.

In construing a statute, legislative intent must be ascertained from the language of the statute itself if the language is plain and unambiguous. *Connecticut Theater Foundation, Inc.* v. *Brown,* 179 Conn. 672, 676, 427 A.2d 863 (1980). In the absence of statutory definition, § 12-342 must be "construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a). Courts may not "read into statutes provisions which are not clearly stated." *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979). "The words of a statute are to be interpreted in their natural and usual meaning unless the context indicates that a different meaning was intended." *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 505, 356 A.2d 139 (1975), quoting *Brown* v. *New Haven Taxicab Co.,* 92 Conn. 252, 254, 102 A. 573 (1917). As pointed out in the Probate Court decree, there is nothing in the statute, here, to indicate that the word "proceeds" is not to be taken in its "ordinary and popular sense" as that amount which is paid over to the beneficiary of the policy. *Eastern Connecticut Cable Television, Inc.* v. *Montville,* 180 Conn. 409, 412, 429 A.2d 905 (1980).

Where a statute or regulation does not define a term "it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary meaning." *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 500, 423 A.2d 129 (1979). The word "proceeds" is defined in Black's Law Dictionary as follows: "Issues; income; yield; receipts; produce; money or articles or other thing of value arising or obtained by the sale of property; *the sum, amount, or value of property* sold or *converted into money* or into other property." (Emphasis added.) Likewise, Webster's defines "proceeds" as "what is produced by or derived from something . . . by way of total revenue: the total amount brought in: YIELD, RETURNS . . . the net profit made on something . . . the net sum received (as for a check, a negotiable note, an insurance policy) after deduction

of any discount or charges." Webster, Third New International Dictionary. The commonly accepted definitions of the word "proceeds" thus fully support exemption of the entire net proceeds.

To support further the foregoing interpretation of the word "proceeds," the defendants' witness, Edward Francis Dalton, the vice president and actuary of Phoenix Mutual and an expert with twenty-eight years of experience in the insurance industry, testified at length as to the usage and meaning of the terms employed. He first explained the policy provisions entitled "Annual Participation in Surplus." The purpose of that provision is "to describe the company practice and obligation to participate surplus—to distribute surplus to policyholders as a mutual life insurance company." That "divisible surplus," based upon actuarial calculations with reference to the excess of assets over liabilities of the company, is distributed each year by vote of the company's board of directors to policyholders as "dividends."

Combined with the accumulated dividends and paid to the beneficiary on the insured's death is an amount characterized as a "post-mortem dividend." Dalton defined this item as "a pro rata dividend . . . credited for the portion of the policy year that has passed . . ." prior to the date of the insured's death. He further testified that as a matter of practice in the insurance industry the portion of any premium paid for the period of the policy year beyond death is paid to the designated beneficiary of the policy and is called a "returned premium." Referring to line 15 of the Internal Revenue Service form 712 supplied by Phoenix Mutual as to each policy, it was Dalton's expert opinion that "the proceeds payable under the policy correspond to the amount shown on line 15 which represents all of the benefits which flow from the policy, payable upon death." Line 15 of the federal form is entitled "Amount of Proceeds if Payable in One Sum" and represents,

as to each policy, the total amount paid to the executors; the face amount plus accumulated dividends, postmortem dividends and returned premiums.

With respect to payment of benefits, the policies themselves provide as follows: "PAYMENT OF BENEFITS. All sums payable under this policy are payable at the Company's Home Office at Hartford, Conn. Any sum payable hereunder at the death of the insured or at maturity will be increased by any dividends or insurance additions and any premium deposit fund then standing to the credit hereof, and will be decreased by any indebtedness to the Company on account of or secured by this policy, including any portion of the current policy year's premiun unpaid at the death of the insured." In Dalton's words, the sums payable under the policies would "include the face amount, any dividends, such as the dividend accumulation fund or paid up insurance additions, and any premium deposit fund, if there is any, and it would be decreased by any policy loan or unpaid premiums."

Under the policies involved in this case, $34,078.49 was paid to the executors as beneficiary under policy No. 687,699 and $17,081.69 was paid to the executors as beneficiary under policy No. 708,053. It is those amounts which represent the "proceeds" of those life insurance policies. It is those total amounts which, it would appear, are exempted from the succession tax by the plain language of § 12-342.

Even if we were to consider that the word "proceeds" is, as used in § 12-342 to describe what is exempted from succession tax, ambiguous, then the statute would have to be construed to determine the meaning the legislature intended. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980). Resolution of any ambiguity must be guided by the maxim that ambiguities in taxing statutes are to be resolved or construed in favor of the taxpayer. *National Amusements, Inc.* v. *Brown,* 171 Conn. 172, 176,

368 A.2d 1 (1976). In that connection, it is instructive to look at the history of what is now § 12-342. The "proceeds" of life insurance policies payable at the death of the insured "to his estate, the executors of his will or the administrators of his estate" were first made explicitly subject to the succession tax in 1929. Public Acts 1929, c. 299, § 4. Then, in 1933, the legislature exempted *"the proceeds of any policy of life or accident insurance payable to a named beneficiary or beneficiaries . . . ."* while continuing to subject to the succession tax "proceeds" payable to an estate, its executors or administrators. General Statutes, Cum. Sup. 1933, § 487c. In 1963, the legislature broadened the exemption specifically to include "such proceeds payable to a trustee or trustees under an inter vivos or testamentary trust . . . ." Public Acts 1963, No. 514. The legislature left intact the clause subjecting to tax "proceeds" payable to a decedent's estate. Id. However, in 1969, the section was again amended to include within the scope of the exemption from succession tax "proceeds of any insurance policy of a decedent payable at his death to his estate, the executors of his will or the administrators of his estate." Public Acts, Spec. Sess., July, 1969, No. 784, § 1.

Review of the legislative history of No. 784 of the 1969 Public Acts reveals no explicit discussion of what was meant by insurance "proceeds." Rather, the legislative emphasis was upon achieving uniform treatment for all insurance "proceeds" regardless of the identity of the beneficiary. See 13 S. Proc., Pt. 8, 1969 Spec. Sess., July, p. 263–65. On July 8, 1969, Governor John Dempsey vetoed No. 784 of the 1969 Public Acts noting that its effect would be greatly to "broaden the exemption of insurance policy proceeds from the succession tax . . . ." Governor's veto message, Public Acts 1969, No. 784. The Governor's veto was overridden on July 22, 1969, again in the interest of uniformity in treatment of insurance proceeds for purposes of the succession tax. See 13 S. Proc., loc. cit.

Such statements as do appear in the legislative history tend clearly to support the executors' position that all amounts paid under a life insurance policy are lumped together and considered to be the "proceeds" of the policy in the ordinary common-sense meaning of the word.

Finally, if any further support for this conclusion is needed, Connecticut case law supports the executors' contention that the total amount paid to the beneficiary of a life insurance policy is exempt under § 12-342 as "proceeds" of life insurance. This is so with reference to the nature of the succession tax as well as in the relationship of the beneficiary to the insurer. Connecticut's succession tax is "a tax imposed on the privilege of receiving property from a decedent at death." *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 238, 377 A.2d 305 (1977). "The basis of the succession . . . tax is 'the right of possession or enjoyment of property . . . .' The taxable incident is 'the shifting of the enjoyment of property—the economic benefits thereof or economic interests therein.' " (Citations omitted.) Id., 238–39. In the case of the payment made to the estate of David W. Mabee under the two Phoenix Mutual policies, the right to possession and enjoyment of the entire amount paid "shifted" to the estate. But for the exemption of § 12-342, the total of all amounts paid would be subject to the succession tax. Conversely, because of the exemption granted, the entire amount which would otherwise be part of the taxable estate forms no part of it.

Furthermore, "the right of inheritance or succession becomes fixed and determined at the moment of the death of the owner, and although distribution occurs a considerable time thereafter, it relates back to the date of the death as the time when the right of the beneficiary became fixed." *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 144, 161 A. 83 (1932). The right to insurance proceeds is vested in the beneficiary

as a creditor of the insurance company. *Connelly* v. *Wells,* 142 Conn. 529, 535, 115 A.2d 444 (1955); *Silberman* v. *Blodgett,* 105 Conn. 192, 217, 134 A. 778 (1926). Thus, as of the date of Mabee's death, his estate as beneficiary succeeded to the full bundle of rights under the policies, including the right to receive, as part of the "Payment of Benefits" due under the policies, "accumulated dividends," "post-mortem dividends" and "returned premiums." This is so also because the "policy is a contract to pay a sum of money to a third party, performance of which is postponed until the death of the insured." *Sigal* v. *Hartford National Bank & Trust Co.,* 119 Conn. 570, 576, 177 A. 742 (1935); see *Day* v. *Walsh,* 132 Conn. 5, 12, 42 A.2d 366 (1945). Where a beneficiary has been designated by the insured "and the insured dies while the designation of that beneficiary is still in effect, *whatever amount is due at his death* is payable to that person . . . ." (Emphasis added.) *Sigal* v. *Hartford National Bank & Trust Co.,* supra, 570; see *Connelly* v. *Wells,* supra. The beneficiary is owner of the right to receive the proceeds upon the death of the insured. Under the Phoenix Mutual policies, the beneficiary (the estate) was entitled to the entire amount paid under each policy—and those amounts are the "proceeds" of the policies specifically exempted from succession tax by § 12-342.

Case law in other jurisdictions interpreting similar statutes also supports the executors. *In re Bracken's Estate,* 56 Wash. 2d 17, 351 P.2d 151 (1960), dealt with a situation in which the cash surrender value of the policies in question exceeded their face value. In holding the full amount payable under the policies exempt to the extent of the $40,000 exemption available under the Washington statute, the court found that the legislature "intended that the exemption be applied to the total proceeds of an insurance policy without distinction as to the character of such proceeds, and without any preliminary segregation of any part thereof.

"We find nothing in the statute, expressed or implied, which might reasonably be construed as directing that the proceeds be segregated prior to the application of the exemption as appellant's contention would require. Such an interpretation reads into the statute language which is not there.

"We are satisfied the legislature intended the exemption to apply to all the proceeds of a contract of insurance." Id., 19–20.

Similarly, in *State Department of Revenue* v. *Estate of Powell,* 165 Ind. App. 482, 333 N.E.2d 92 (1975), the court refused to differentiate between different types of insurance "proceeds." There, the court remarked: "Our taxing statute does not state that only certain types of trusts are considered, nor is it clear what is meant by 'life insurance.' Certainly the Legislature was aware of the many different types of life insurance, and the several types of trusts. Had it so desired the Legislature could have easily designated what types of insurance proceeds were taxable, and whether such proceeds could be paid into trusts of whatever nature." Id., 500.

Nor does the Connecticut statute, § 12-342, distinguish between types of "proceeds" of insurance. Nothing in the statute, in the legislative history of the statute, or in the interpretation by the tax department which prevailed until 1979 points toward making the kind of distinctions between amounts paid under insurance policies for which the state now contends.

The treatment of the items in question under the federal estate tax law, as covered by the executors in their most exhaustive and well-researched brief, further bolsters their position. It has long been the rule that the gross estate for federal estate tax purposes includes "[t]he value of all property . . . [t]o the extent of *the amount receivable* by the executor as insurance under policies on the life of the decedent." (Em-

phasis added.) Internal Revenue Code § 2042 (1982); see Internal Revenue Code § 811 (g) (1939). The Internal Revenue Code Regulations § 20.2042-1 (1982) provide in pertinent part as follows: "PROCEEDS OF LIFE INSURANCE. (a) IN GENERAL. (1) Section 2042 provides for the inclusion in a decedent's gross estate of the *proceeds* of insurance on the decedent's life (i) receivable by or for the benefit of the estate . . . .

"(3) . . . the amount to be included in the gross estate under Section 2042 is the *full amount receivable* under the policy." (Emphasis added.)

In listing the Phoenix Mutual insurance policy proceeds on schedule D of form 706, the federal estate tax return, the executors included the full amounts shown on federal form 712, the life insurance statement form, for each policy: $34,078.49 and $17,081.69, respectively. Those figures included the full amounts of the "accumulated dividends," "post-mortem dividends" and "returned premium" as shown on form 712 for each of the policies. This is consistent with the instructions for schedule D of form 706, which direct reporting "[t]he full amount of the proceeds of insurance on the life of the decedent receivable by the personal representative or otherwise payable to or for the benefit of the estate." The instructions for schedule D further direct that the following be included: "the name of the insurance company, number of the policy, name of the beneficiary, principal amount of any indebtedness to the insurance company deductible in determining the net proceeds, the interest on the foregoing indebtedness accrued to the date of death, and the amounts of accumumlated dividends (including interest payable thereon), post-mortem dividends, and returned premiums. If the policy proceeds are payable in one sum, the value to be entered in the value column of schedule D is the net proceeds received." This treatment of insurance "proceeds" under federal law, which subjects such proceeds to tax, strongly argues that, in

similar fashion, the Connecticut legislature intended to exempt from the Connecticut tax not only the face value of the policies, but also that entire bundle of items which comprises the net "proceeds."

The Connecticut legislature must be deemed to have acted with knowledge of the federal act and its effect in this context. Had the legislature, in view of the broad inclusive sweep of the comparable federal language, wished to avoid a similar broad state exemption of "proceeds," it could easily have done so by appropriate language in § 12-342, but it did not do so. In the total absence of any indication in the legislative history that the legislature had any other result in mind but total exemption of all such insurance amounts payable, there is no basis for the commissioner's new position and it appears obvious that no breakdown of amounts payable on account of life insurance policies into taxable and nontaxable portions was contemplated.

If it appears to have required this court many pages to reach the same conclusion as that spelled out by the probate judge in his brief but most convincing decree of May 18, 1981, it is because it seems desirable to put to rest, perhaps finally, a question of statutory interpretation only recently raised by the commissioner of revenue services.